**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

DARRYL PERNELL BUTLER,

      Plaintiff,

      v.

PHILLIP GLENN, et al.,

      Defendants.

CIVIL ACTION NO.: 4:23-cv-63

## O R D E R

Plaintiff Darryl Pernell Butler is a prisoner in the custody of the Georgia Department of Corrections ("GDOC"). He filed this action pro se and in forma pauperis on March 8, 2023, alleging constitutional violations related to his medical care at Coastal State Prison. (Doc. 1.) Defendants Dawn Mieres, Aaron Pineiro, Briana Kaigler, and Phillip Glenn filed Motions for Summary Judgment. (Docs. 42 & 53.) The Court terminated those motions as moot, given the Eleventh Circuit's holding in Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024), which clarified the applicable deliberate indifference analysis in the Eleventh Circuit. (See generally doc. 61.) Defendants filed renewed Motions for Summary Judgment. (Docs. 62 (Pineiro, Glenn, and Kaigler) & 66 (Mieres).) While these motions were pending, Defendant Mieres' employer and indemnifier, Wellpath, LLC ("Wellpath"), filed for Chapter 11 bankruptcy. (Doc. 80 (Notice of Bankruptcy Stay).) This Court stayed the case pending resolution of Wellpath's bankruptcy. (Doc. 81.) After Mieres informed the Court of Wellpath's discharge from bankruptcy, (docs. 87 & 88), the Court lifted the stay, (doc. 89). Mieres then filed a Motion to Dismiss predicated on a

1

third-party release contained in Wellpath's bankruptcy plan.[1] (Doc. 95.) Butler responded, (doc. 99), Defendant replied, (docs. 100 & 101),[2] and the Motion is now ripe for review. For the reasons articulated below, Defendant's Motion to Dismiss is **GRANTED**. (Doc. 95.)

Also before the Court is the Magistrate Judge's Report and Recommendation that Defendants Pineiro, Kaigler, and Glenn's Motion for Summary Judgment, (doc. 62), should be granted and that Defendants Pineiro and Kaigler should be granted qualified immunity. (Doc. 97.) Plaintiff has objected to this recommended disposition. (Doc. 98.) After a careful de novo review of the entire record, the Court concurs with the Magistrate Judge's Report and Recommendation. Therefore, for the reasons explained below, Plaintiff's objections are **OVERRULED**, (doc. 98), and the Court **ADOPTS** the Report and Recommendation, (doc. 97), as its opinion. Defendants Pineiro, Kaigler, and Glenn's Motion for Summary Judgment is **GRANTED**. (Doc. 62.) Additionally, for the reasons explained by the Magistrate Judge, Defendants Pineiro and Kaigler are entitled to qualified immunity. (Doc. 97, pp. 30—32.)

## MIERES' MOTION TO DISMISS

### Discussion

Defendant Mieres, an employee of Wellpath, LLC during the period relevant to this suit, moves to dismiss Butler's claim against her pursuant to Wellpath's Bankruptcy Plan. (Doc. 95).

---

[1] The Court previously terminated Defendant Mieres' Motion for Summary Judgment pending its resolution of her Motion to Dismiss, discussed below. (See doc. 97, pp. 25—26.) That Motion remains, for the reasons articulated by the Magistrate Judge, moot. (Id.)

[2] Defendant Mieres' Reply was filed 7 days late. (Doc. 100.); see S.D. Ga. L. Civ. R. 7.6. When a party submits an untimely filing, it is ultimately the Court's discretion whether to consider the document. Young v. City of Palm Bay, 358 F.3d 859, 863-864 (11th Cir.2004). Here, the late filing caused no real prejudice to Plaintiff. He did not object to its untimeliness. (See generally docket.) Moreover, he has had substantial time to file any sur-reply to respond to Defendant's arguments but did not do so. Finally, as discussed below, the arguments presented in Defendant's Reply are unnecessary for the disposition of Defendant's Motion. Therefore, the untimeliness of the Reply is moot.

Mieres argues (1) she is a Released Party under the Bankruptcy Plan, (2) Plaintiff is a Releasing Party under the Bankruptcy Plan, (3) as a Releasing Party, Plaintiff received notice of the Bankruptcy Plan and failed to opt out of the release of his claims, and (4) the Plan enjoins Plaintiff from pursuing claims against Defendant Mieres. (See id., at pp. 2—5.) Butler does not dispute that he did not file an opt-out notice as required by the Bankruptcy Plan to continue pursuing his claims in this Court. (See doc. 99, pp. 1-3.)

> Article IX.D of the Bankruptcy Plan provides:
>
> ... each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, interests, damages, remedies, causes of action[ ] ... whether known or unknown, foreseen or unforeseen, existing or hereinafter existing, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, asserted or assertable, direct or derivative, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Releasing Parties or their Estates, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from...the assertion or enforcement of rights or remedies against the Debtors...or any other act or omission...or other occurrence taking place on or before the Effective Date....

(Doc. 95-1 at 132); see also In re Wellpath Holdings, Inc., Case No. 24-90533, doc. 2596, p. 132 (Bankr. S.D. Tex. May 1, 2025). The Plan defines Releasing Parties, in relevant part, as a claim holder "that is or was an incarcerated individual that does not affirmatively elect to opt out of being a Releasing Party." (Doc. 95-1, p. 82.) A Released Party includes each Debtor and the Related Parties of each Debtor. (Id. at pp. 81—82.) A Related Party includes current and former employees of Wellpath. (Id. at p. 81.) Article IX.F provides that a failure to opt out of the Third-Party Release enjoins an individual from pursuing these claims permanently. (Id. at p. 134.) The

3

Plan became effective on May 9, 2025.  See, e.g., In re Wellpath Holdings, Inc., Case No. 24-90533, doc. 2680 (Bankr. S.D. Tex. May 9, 2025).

The Third-Party Release applies to Plaintiff's claims.  Plaintiff is a Releasing Party and Defendant Mieres is a Released Party under the terms of the Bankruptcy Plan.  Butler claims that Mieres was deliberately indifferent to his medical needs from his arrival at CSP in May 2022 through the filing of his Complaint on March 8, 2023.[3]  (See generally doc. 1-1).  Thus, the period relevant to his claim against Mieres ends prior to November 11, 2024, the day Wellpath petitioned for bankruptcy.  After the Confirmation Order confirming the Bankruptcy Plan was issued on May 9, 2025, incarcerated litigants with claims against current and former Wellpath employees, classified as Released Parties under the Plan, were permitted to opt-out of the release of their claims no later than July 30, 2025.  (Doc. 95-1, p. 52); see also In re Wellpath Holdings, Inc., Case No. 24-90533, doc. 2680, p. 3 (Bankr. S.D. Tex. May 9, 2025).  Because Mieres has shown that Butler's claim against her falls within the ambit of Wellpath's Third-Party Release and Butler failed to timely opt-out of Wellpath's Third-Party Release within the period to do so, Butler's claim against Mieres in this Court is enjoined and Mieres' Motion to Dismiss, (doc. 95), is **GRANTED**.

This dismissal is consistent with similar cases in the Southern District of Georgia and across the United States involving Wellpath employee defendants and incarcerated plaintiffs who did not timely opt-out of Wellpath's Third-Party Release.  See, e.g., Boyd v. Adams, 2026 WL 165482, at *7 (S.D. Ga. Jan. 21, 2026) (finding that "because the Third-Party Release applies to Plaintiff's claims against [Wellpath employee] Defendant [ ], and Plaintiff did not opt-out of the Third-Party Release, his claims against Defendant [ ] are subject to the release and should be

---

[3] Butler does not assert a continuing violation of his constitutional rights.  (See generally doc. 1-1.)

dismissed."); <u>Washington v. Al Cannon Det. Ctr.</u>, 2025 WL 3484900, at *2-3 (D.S.C. Dec. 3, 2025) (dismissing Wellpath nurse practitioner defendant because Plaintiff did not opt out of the Third-Party Release); <u>Sutton v. Kelly</u>, 2025 WL 2463824, at *1-2 (D. Mont. Aug. 27, 2025) (dismissing case against Wellpath nurse defendants because plaintiff "did not timely opt out of the third-party releases contained in the Plan"); <u>Parker v. Gugino</u>, 2025 WL 3264103, at *2 (S.D. Ind. Nov. 21, 2025) (dismissing Wellpath employee "[b]ecause the record from the Bankruptcy Court confirms that claims against Wellpath and its employees . . . that occurred before the bankruptcy petition had been discharged").

Butler presents two arguments that dismissal upon the basis of the Third-Party Release is improper.  First, Butler argues that, because Mieres has not shown that he was properly served with notice of Wellpath's Third-Party Bankruptcy release, dismissal would be improper under the Constitution and the Bankruptcy Rules.  (Doc. 99, pp. 3—4.)  Second, Butler argues that Wellpath's third-party release is violative of the Supreme Court's recently announced prohibition of non-consensual third-party releases.  (<u>Id</u>. at. p. 4 (citing <u>Harrington v. Purdue Pharma L. P.</u>, 603 U.S. 204 (2024)).)  However, this Court cannot opine on the merits of Butler's objections to the bankruptcy release, as his arguments must be directed to the bankruptcy court, not this Court. (Doc. 95-1 at 140-41 ("[T]he Bankruptcy Court shall retain *exclusive jurisdiction* over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy code, including jurisdiction to . . . resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions . . . ." (emphasis added))); <u>see also</u> <u>In re Wellpath</u>, No. 24-90533, doc. 2596 at 140-41 (Bankr. S.D. Tex. May 1, 2025) (same); <u>Jones</u>

5

v. Hawes, 2025 WL 4072112, at *1 (S.D. Ga. Dec. 22, 2025) ("[T]his Court is not the proper venue for determining Plaintiff's service contentions . . . . The [Wellpath] Bankruptcy Plan provides any request for relief relating to service or the opt-out procedures must be raised in and resolved by the bankruptcy court."); Guggenheimer v. Wellpath, LLC, 2025 WL 3008148, at *4 (M.D. Pa. Oct. 27, 2025) (finding that the plaintiff's complaints regarding lack of adequate notice must be filed with the bankruptcy court). For these reasons, his arguments against Defendant's Motion fail.

## PINEIRO, KAIGLER, AND GLENN'S MOTION FOR SUMMARY JUDGMENT

### Background

Butler's claims against Pineiro and Kaigler, wardens at Coastal State Prison ("CSP"), stem from the fact that he wasn't consistently provided his prescribed blood pressure medication from his arrival at CSP on May 19, 2022 through March 8, 2023. (See generally, doc. 1.) Butler asserts that he raised his challenges in receiving medication to Pineiro and Kaigler separately, on more than one occasion each, and that their responses to Butler's requests for assistance demonstrated deliberate indifference to his serious medical need. (Doc. 97, pp. 16—25.)

Butler points to three interactions involving Pineiro that he asserts demonstrate Pineiro's indifference to his medical need. These events include a grievance Butler filed and two conversations where Butler directly spoke to Pineiro about his medicine. Butler filed a grievance in November 2022 related to his medicine delays that Pineiro granted. (Doc. 62-2, p. 4; see also, doc. 71-1, p. 47.) Butler also complained verbally twice to Pineiro.[4] (Doc. 62-2, pp. 3—5.) After the first conversation, Pineiro called Defendant Mieres, CSP's Health Services

---

[4] Butler alleges that he had over a dozen conversations about his medicine delays with Pineiro between February 2023 and October 2023, (doc. 75-1, p. 2), but, as the Magistrate Judge observed, (doc. 97, p. 22), Butler does not clarify whether any of those conversations occurred during the period relevant to this suit.

6

Administrator, the same day and relied on her to resolve Butler's issue.  (Id. at pp. 3—4.)  After the second conversation, Pineiro personally walked Butler to the medical unit and, in Butler's presence, informed Mieres of Butler's ongoing medical challenges. (Id. at p. 5.)

Butler had two conversations with Kaigler concerning his medication.   Butler asserts that her response to these conversations establishes her deliberate indifference to his medical need. (Doc. 75-2, pp. 1—11.)   After the first conversation, Kaigler immediately called Defendant Mieres to transmit Butler's issues.  (Doc. 62-2, p. 5.)   Kaigler followed up with Mieres the next day and was told that Butler's medication had been ordered and was on its way.  (Id. at p. 6.) After the second conversation with Butler, Kaigler spoke with Mieres, who told her that Butler's prescription had been ordered and that the medical team was awaiting its arrival.  (Id.)   Kaigler represents, and Butler does not dispute, that these were the only two direct interactions they had concerning his medication.   (Id.)

Butler's claim against Glenn arises from a different legal theory than his claims against Pineiro and Kaigler.   Rather than claim that Glenn acted with deliberate indifference to his continuing challenges in receiving his medication, he asserts that Glenn was deliberately indifferent to an acute medical need when he removed Butler from the medical unit at CSP.   (See, doc. 75-2, pp. 15—16.)   On November 10, 2022, Butler was sent to the medical unit because he had a headache.   (Doc. 62-1, p. 2.)   Butler alleges that, while he was waiting for medical assistance, Glenn arrived with another prisoner and questioned why Butler was in the unit.   (Doc. 1-1, p. 9.)   Butler told him that he thought his "blood pressure is up."  (Id.)   Glenn told Butler to leave medical, before he received any treatment, because Glenn needed the medical staff to check on a different prisoner.   (Id.)   Butler alleges his condition significantly deteriorated shortly thereafter, but that it materially improved after he was wheelchaired to medical and given blood

pressure medicine.  (Id. at p. 10.)  Glenn denies any recollection of interacting with Butler on November 10, 2022.  (Doc. 62-2, p. 6.)  The parties dispute whether Glenn was aware of Butler's medication issues prior to this incident.  (Id. at p. 7; doc. 75-1, p. 4.)

## Discussion[5]

### i.    Claims Against Pineiro & Kaigler

The Magistrate Judge recommended that Pineiro and Kaigler be granted summary judgment because Butler could not demonstrate that they acted with deliberate indifference to his complaints concerning his medication.  (Doc. 97, pp. 26—28.)  The Magistrate Judge found that Butler had demonstrated an objectively serious medical need of which Pineiro and Kaigler were aware, but concluded that a reasonable jury could not find that Pineiro or Kaigler acted with recklessness as used in criminal law.  (Id.)  Butler has presented several objections to the Magistrate Judge's recommended disposition of these claims.  (Doc. 98.)  First, Butler objects that the Court did not consider his numerous "kiosk complaint(s)," which he asserts demonstrate his "ongoing well-documented medical need."  (Id. at pp. 2—3.)  This objection is moot because the Magistrate Judge found that Butler had demonstrated an objectively serious medical need. (Doc. 97, p. 26.)  Second, Butler makes further arguments asserting Pineiro and Kaigler's knowledge of his medical condition.  (Doc. 98, pp. 4—5; 7—8.)  As discussed above, the issue of their knowledge of his condition is moot and was resolved in Butler's favor.  Third, Butler claims that the Magistrate Judge credited Pineiro and Kaigler's declarations over Plaintiff's sworn testimony and grievance evidence in violation of the principle that courts cannot weigh evidence

---

[5] The Magistrate Judge elucidated the governing legal standard for motions for summary judgment, the elements of a claim for deliberate indifference to serious medical needs under 42 U.S.C. § 1983, and the required elements for a state official to be entitled to qualified immunity.  (Doc. 97, pp. 8—16.).  No party objects to the legal standards applied in the Report and Recommendation, (see doc. 98; see also, generally docket), and the Court incorporates the same herein.

or resolve credibility disputes at summary judgment.  (Doc. 98, p. 5.)  However, he does not identify any instances where the Magistrate Judge credited Pineiro and Kaigler's declarations over Plaintiff's assertions.  (See generally id.)  A review of the Magistrate Judge's analysis confirms that there are no such instances.  (See generally doc. 97.)  These objections are all, therefore, **OVERRULED**.  (Doc. 98, in part.)

Butler also contends that Pineiro and Kaigler unreasonably relied on the medical staff at CSP, and that unreasonable reliance should preclude summary judgment.  (Doc. 98, p. 3.)  In making this argument, Butler states that the Magistrate Judge "overlooked evidence showing that medical staff had previously lied to Defendant Pineiro and Kaigler on several occasion[s]."  (Id.)  He argues that the medical staff lied to Pineiro and Kaigler on the four distinct occasions they spoke about Butler's medication and when Pineiro granted Butler's grievance.  (Id. at pp. 3—4.)  In Butler's view, the substance of the lie is that the staff represented that they had "resolved" Plaintiff's medication issues.  (Id. at p. 3.)  Butler's objection challenges the Magistrate Judge's finding that Pineiro and Kaigler's reliance on Mieres and the medical staff at CSP was reasonable.  However, Butler distorts the substance of Mieres' communication to Pineiro and Kaigler.  At no point does any party suggest that Mieres ever stated that Plaintiff's medication issues were completely "resolved."  (See generally, docs. 62, 62-2, 75-1, & 75-2.)  The closest such statements are Mieres' representations to Kaigler that Butler's medicine was ordered and on its way.  (Doc. 62-2 at 6.)  Because the Magistrate Judge's recommendation does not rely on any representation from the medical staff at CSP that Butler's medication issues were "resolved," the objection is **OVERRULED**.  (Doc. 98, in part.)

The Magistrate Judge also found that Pineiro and Kaigler were entitled to qualified immunity because they were acting in their discretionary authority when they relied on the medical

9

staff at CSP to provide medical services to Butler.  (Doc. 97, pp. 30—31.)  Plaintiff objects to Pineiro and Kaigler being granted immunity because he believes that they violated his clearly established constitutional rights through their conduct.[6]  (Doc. 98, pp. 11—13.)  As discussed, supra, Pineiro and Kaigler did not violate Butler's constitutional rights because they responded reasonably whenever he requested assistance related to his blood pressure medication, and therefore Butler cannot demonstrate that they acted with deliberate indifference.  This objection is, therefore, meritless.  Butler also argues that the Magistrate Judge erred by concluding that Pineiro and Kaigler's reliance on medical staff was "per se" within the scope of discretionary authority.  (Id. at p. 6.)  Because the Magistrate Judge never made such a "per se" determination, that objection, too, is meritless.  (See doc. 97, pp. 30—31.)  Butler's objections on this issue are **OVERRULED**.  (Doc. 98, in part.)

### ii.    Claim Against Glenn

The Magistrate Judge recommended that Glenn be granted summary judgment because, on the record before the Court, a reasonable jury could not conclude that Glenn was aware of Butler's potentially serious medical needs when he instructed him to leave the medical unit.  (Doc. 97, pp. 29—30.)  Again, Butler presents various objections.  (See generally doc. 98.)

First, Butler contends that the Magistrate Judge improperly credited Glenn's testimony that he could not recall the November 10, 2022 incident and that he did not have prior knowledge of Butler's hypertension diagnosis.  (Doc. 98, p. 10 (citing Anderson, 477 U.S. at 255).)  This objection ignores the portion of the Magistrate Judge's opinion that explicitly considered

---

[6] Butler also argues that Glenn should not be granted qualified immunity.  (Doc. 98, pp. 11—13.).  The Magistrate Judge found that Glenn failed to discharge his threshold burden of demonstrating that he was acting within his discretionary authority. (Doc. 97, pp. 31—32). Therefore, the Magistrate Judge recommended that Glenn's Motion for Summary Judgment should be denied on the alternative ground of qualified immunity.  (Id.)  This objection is, therefore, moot.

Plaintiff's assertions concerning Glenn's prior knowledge of Butler's condition and found, taking Plaintiff's allegations as true, that a reasonable jury still could not find that Glenn was subjectively aware of Butler's acute hypertensive crisis when he removed him from medical.   (Doc. 97, pp. 29—30.)   Of course, this conclusion is premised on the notion that the November 10, 2022 incident actually occurred as Butler alleged.   Because the Magistrate Judge did, in fact, view the facts alleged in favor of Butler, this objection is meritless.

Second, Butler argues that Glenn was aware of his condition and notes that the Eleventh Circuit has held that non-visible conditions may constitute serious medical needs.   (Doc. 98, pp. 9—10 (citing Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).)   As noted, supra, the Court assumed that Glenn was previously aware of Butler's complaints that he was not receiving his medication.   And Butler is correct that non-visible conditions may constitute serious medical needs.   The Magistrate Judge found that Butler demonstrated an objectively serious medical need by identifying a prescription held by a treating physician.   (Doc. 97, p. 26.)   However, the incident forming the basis of Butler's claim against Glenn involves an acute medical issue, not Butler's failure to receive his medication.   And while non-visible conditions may constitute serious medical needs, that does not mean that *every* such condition represents an objectively serious medical need.   As the Magistrate Judge noted, in the absence of doctor-prescribed treatment (which Butler has not demonstrated for his acute condition), a serious medical need is one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   (Doc. 97, p. 28 (quoting Brown, 387 F.3d 1344 at 1351).)   All the record shows is that, at the time he directed Butler to leave the medical unit, Glenn could not observe any outward physical symptoms and only knew that Butler believed, without explanation, that his blood pressure was elevated.   Such limited information is not "so obvious" as to allow a lay person to

easily recognize the need for a doctor's immediate attention.   As such, this objection is **OVERRULED**.   (Doc. 98, in part.)

### CONCLUSION

For the foregoing reasons, Defendant Mieres' Motion to Dismiss, (doc. 95), is **GRANTED**. Additionally, the Court **OVERRULES** Butler's Objections, (doc. 98), and **ADOPTS** the Magistrate Judge's Report and Recommendation as its opinion.   (Doc. 97.)   Defendants Pineiro, Kaigler, and Glenn's Motion for Summary Judgment is **GRANTED**.   (Doc. 62.)

**SO ORDERED**, this 13th day of March, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA